J-S18040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAMON NUNEZ | : | |
| | : | |
| Appellant | : | No. 1139 MDA 2025 |

Appeal from the Judgment of Sentence Entered September 30, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002020-2021

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: AUGUST 11, 2026**

Appellant, Ramon Nunez, appeals from the aggregate judgment of sentence of 15 to 30 years of incarceration followed by 10 years of probation imposed after a jury found him guilty of rape, involuntary deviate sexual intercourse (IDSI), unlawful contact with a minor, possession of a firearm prohibited, corruption of minors, and indecent assault.[1] On appeal, Appellant challenges the sufficiency and weight of the evidence, and he argues that the trial court abused its discretion in failing to give the requested jury instruction concerning consent. After review, we affirm in all respects but remand for the imposition of the mandatory three-year term of probation pursuant to 42 Pa.C.S. § 9718.5.

---

[1] 18 Pa.C.S. §§ 3121(a)(2), 3123(a)(2), 6318(a)(1), 6105(a)(1), 6301(a)(1)(ii), and 3126(a)(3), respectively.

The trial court summarized the relevant facts and procedural history of this matter as follows:

The victim, born on December 30, 2003, testified that her maternal aunt and her husband, the forty-three-year-old Appellant, moved into her home in 2020. The first incident occurred when the victim and the Appellant were home alone together. The victim was in the living room while playing on her phone when the Appellant began massaging her feet. The Appellant then moved his hand up her body and underneath her robe until he reached the outside of her vagina. The Appellant then put his mouth on the outside of the victim's vagina. The next few incidents occurred in the victim's bedroom. The victim testified that the Appellant would enter her bedroom while she was lying in bed. The Appellant would put his hand underneath the bedsheets and touch the outside of the victim's vagina. The Appellant pulled the victim's underwear down, put his mouth on the outside of her vagina, and, during other occasions, put the tip of his penis inside of her vagina. The victim testified that, if no one opened the front door for him, he would crawl through her bedroom window while she was sleeping. The Appellant would text the victim the next morning, "Thank you for last night." For this reason, the victim testified that the Appellant must have touched her while she was asleep. On the occasions the victim woke up, the Appellant pulled down her underwear, put his mouth on the outside of her vagina, and inserted his penis. The victim testified that she froze during these incidents because she was afraid of the Appellant since he brought a firearm with him that he set down on her dresser. The gun looked like a black "police gun" that was approximately eight inches. The Appellant told the victim that their encounters were a secret. The victim discovered that she was pregnant in October of 2020. It is at this point when the victim told her mother and her maternal aunt that the father of the baby was the Appellant and that she did not want to have sex with the Appellant.[FN9]

> [FN9] The parties stipulated to the forensic DNA diagnostic report determining that the Appellant is the biological father of the victim's child.

[T]he victim's mother, testified that the Appellant brought a black gun … into her home. [She] testified that she did not like how the Appellant would spend time in her daughter's bedroom. The

> victim told her mother that she was scared of the Appellant because of his gun and that the sex was not consensual. [The victim's parents] confronted the Appellant. The Appellant claimed that the victim consented to the sex. The Appellant called the victim on the phone in front of her parents to question her, and she reiterated that the sex was not consensual. "Have I forced you? I'm not angry, but I am annoyed because you presented this as if I had forced you." The victim replied, "You know it's a no."

Trial Court Opinion (TCO), 11/14/25, at 2-4 (internal citations to the record omitted and some formatting altered).

In a criminal information filed on August 10, 2021, Appellant was charged with rape, IDSI, unlawful contact with a minor, possession of a firearm prohibited, corruption of minors, and indecent assault. Following a jury trial held on March 11-12, 2024, Appellant was convicted on all charges. On July 1, 2024, the trial court sentenced Appellant to a term of 10 to 20 years for rape, 5 to 10 years for IDSI to be served concurrently to the sentence for rape, 5 to 10 years for possession of a firearm prohibited to be served consecutively to the sentence for rape, 5 years of probation for unlawful contact with a minor to be served consecutively to the incarceration portion of his sentence, 5 years of probation for corruption of minors to be served consecutively to the sentence of probation for unlawful contact with a minor, and no further sentence for indecent assault. This resulted in an aggregate

sentence of 15 to 30 years of incarceration followed by 10 years of probation. *See* Sentencing Order, 7/1/24, at 1-2.[2]

Appellant filed a timely post-sentence motion, which resulted in a resentencing hearing that occurred on September 30, 2024.[3] At the resentencing hearing, the trial court provided its reasons for sentencing Appellant outside the standard range of the sentencing guidelines for rape, and it ultimately reimposed the same sentences it entered on July 1, 2024. *See* Resentencing Order, 9/30/24, at 1-2; N.T. Resentencing Hearing, 9/30/24, at 5-6. No direct appeal was filed.

On April 25, 2025, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Counsel was appointed, and on July 15, 2025, Appellant filed an uncontested counseled PCRA petition seeking the reinstatement of his direct appeal rights *nunc pro*

---

[2] However, as will be discussed below, the trial court did not impose the mandatory period of probation pursuant to 42 Pa.C.S. §§ 9718.5 and 9799.14(d).

[3] In his post-sentence motion, Appellant requested modification of his sentence, alleging that the trial court failed to provide reasons for sentencing Appellant outside the standard range of the sentencing guidelines; Appellant also sought a judgment of acquittal based on insufficient evidence and, in the alternative, a new trial based on the weight of the evidence. Post-Sentence Motion, 7/11/24, at 1-7. The trial court denied Appellant's post-sentence motion for judgment of acquittal and motion for a new trial, and it granted a hearing on the merits of his motion to modify his sentence. *See* Order, 9/18/24 (single page). Appellant sought additional relief in the post-sentence motion concerning the instant case and a related trial court docket, *see* Post-Sentence Motion, 7/11/24, at 5-7, however, those additional requests for relief are not relevant to the instant appeal.

*tunc*. The PCRA court granted Appellant's petition, and this timely appeal followed.

On appeal, Appellant raises the following issues, which we have reordered as follows:

A. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to sufficiently prove:

1. In relation to the charge of rape, [IDSI], and indecent assault that the Appellant used threat of force that would prevent resistance by a person of reasonable resolution.

2. In relation to the charge of possession firearm prohibited, that the Appellant did (a) possess a firearm and (b) that the item was a firearm.

3. In relation to the charge of unlawful contact with a minor, the Appellant engaged in an unlawful act.

B. Whether the trial court erred in accepting the jury's verdict which was contrary to the weight of the evidence presented which established the Appellant acted with consent.

C. Whether the trial court abused its discretion in failing to give the requested jury instruction regarding consent where consent was an issue at trial.

Appellant's Brief at 4 (issues reordered and formatting altered).[4]

_____

[4] We reordered Appellant's issues to first address his challenge to the sufficiency of the evidence. *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) (explaining "[b]ecause a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first").

## A. Sufficiency of the Evidence

## 1.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions for rape, IDSI, and indecent assault. Our scope and standard of review are as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

Although the finder of fact may make reasonable inferences from the testimony presented, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the fact-finder of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review. Finally, because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023) (internal citations omitted and formatting altered). Furthermore, "[t]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." *Commonwealth v. Izurieta*, 171 A.3d 803, 807 (Pa. Super. 2017) (quoting *Commonwealth v. McDonough*, 96 A.3d 1067, 1069 (Pa. Super. 2014)).

In his brief, Appellant argues

[the victim] testified that she was scared because [Appellant] had a gun and he shot someone; however, this occurred AFTER, the [victim] and Appellant began engaging in sexual intercourse. While the [victim] testified to multiple sexual encounters, the Commonwealth chose to charge it as one act; therefore, a jury could not determine that the beginning sexual relations were consensual but the sexual relations occurring after the Appellant procured a firearm were not.

Appellant's Brief at 15-16 (some formatting altered).

At the outset, we observe that Appellant's Rule 1925(b) statement contains no reference to the timing of **when** Appellant first disclosed or displayed the firearm to the victim, nor does it address when the victim could first have perceived herself to be under threat of force. Additionally, this timing argument is not mentioned or suggested in the statement of questions involved in Appellant's brief. Accordingly, we find the issue concerning timing to be waived. **See** Pa.R.A.P. 1925(b)(4)(vii)(providing that issues not included in a Rule 1925(b) statement are waived on appeal); Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

- 7 -

Furthermore, Appellant's brief fails to cite any portion of the record demonstrating when he displayed the firearm to the victim or otherwise informed her of its presence. As such, this claim is waived on that basis as well. ***See Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 884-85 (Pa. Super. 2019) (explaining that this Court will not scour the record to uncover evidence to support an argument and will find an underdeveloped argument waived).[5]

Appellant's Rule 1925(b) statement provides in relevant part, only as follows:

> The trial court abused its discretion, erred, and infringed on [Appellant's] constitutional rights including his right to Due Process of Law under the Constitution of the United States and under the Constitution of Pennsylvania by accepting the jury verdict where the Commonwealth failed to present sufficient evidence:
>
> a. In relation to the charge of Rape, that [Appellant] used threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.
>
> b. In relation to the charge of Involuntary Deviate Sexual Intercourse, that [Appellant] used threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.
>
> * * *

---

[5] In any event, the information charged the crimes of rape, IDSI, and indecent assault as occurring between 8/1/20 and 12/22/20. Information, 8/10/21, at 1-2. Based on the victim's testimony, the jury was free to conclude that the crimes of rape, IDSI, and indecent assault occurred at a time when the victim was scared and did not resist Appellant's assaults because he had a gun, satisfying the element of forcible compulsion. ***See*** N.T., Trial, 3/11-12/24, at 34-48.

g. In relation to the charge of Indecent Assault, that [Appellant] used threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

Rule 1925(b) Statement, 10/5/25, at 2-3 (unnumbered). Further, as stated above, in his statement of questions involved, the issue is set forth as follows: "Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to sufficiently prove: In relation to the charge of Rape, Involuntary Deviate Sexual Intercourse, and Indecent Assault that the appellant used threat of force that would prevent resistance by a person of reasonable resolution." Appellant's Brief at 4 (some formatting altered). Accordingly, the issue Appellant raised before the trial court and that is now before us on appeal is simply whether the Commonwealth presented sufficient evidence to establish the forcible compulsion elements of rape, IDSI, and indecent assault. We will confine our discussion to that discrete issue.

The Crimes Code defines these crimes as follows. Rape: "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant: By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa.C.S. § 3121(a)(2). IDSI: "A person commits a felony of the first degree when the person engages in deviate sexual intercourse[6] with a complainant: by threat

---

[6] Deviate sexual intercourse is defined as "[s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3101.

of forcible compulsion that would prevent resistance by a person of reasonable resolution[.]" 18 Pa.C.S. § 3123(a)(2).[7] Indecent assault: " A person is guilty of indecent assault if the person has indecent contact[8] with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution[.]" 18 Pa.C.S. § 3126(a)(3).

The trial court addressed this issue as follows:

> For the charges of rape and IDSI, the Commonwealth presented evidence, in the form of testimony from the victim, that the Appellant climbed through her bedroom window, set a firearm on her dresser, then inserted his penis into her vagina without her consent. The Commonwealth also presented testimony that the Appellant placed his mouth on the victim's vagina without her consent. The Commonwealth further presented evidence through the victim's testimony that she was scared of the Appellant and froze during the nonconsensual sexual acts because of his firearm. The Commonwealth presented testimony from the victim's mother that the Appellant was in possession of a firearm and brought it

---

[7] "[O]ral contact with the female genitalia is sufficient to support the penetration requirement for IDSI." **Commonwealth v. Trimble**, 615 A.2d 48, 50 (Pa. Super. 1992); **see also Commonwealth v. Ziegler**, 550 A.2d 567 (Pa. Super. 1988) (explaining that the victim's testimony that the defendant licked her vagina was sufficient evidence of penetration to support a conviction for IDSI), *rev'd on other grounds by* **Commonwealth v. Goggins**, 748 A.2d 721 (Pa. Super. 2000).

[8] Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

into her home even after being asked not to. The Commonwealth also presented testimony from Detective Maus that the Appellant possessed an extended magazine, a holster, and live rounds in his home. Finally, the Commonwealth presented a DNA diagnostic report that the Appellant is the biological father of the victim's child.

\* \* \*

For the charges of unlawful contact with a minor, corruption of minors, and indecent assault the Commonwealth presented evidence that, at the time of the incidents, the victim was 16 years old, and the appellant was forty-three years old. The Commonwealth further presented evidence, through the testimony of the victim, that the Appellant touched and placed his mouth on the victim's vagina, and inserted his penis into her vagina. Again, the Commonwealth presented evidence through the victim's testimony that she was scared of the appellant and froze during the nonconsensual sexual acts because of his firearm.

TCO at 12-13 (internal citations omitted and formatting altered). Furthermore, these assaults occurred on numerous occasions. *Id.* at 2.

After review, we conclude that when the evidence, including the testimony of the victim, is reviewed in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth provided sufficient evidence to prove the forcible compulsion element of rape, IDSI, and indecent assault beyond a reasonable doubt. *See Spence*, 290 A.3d at 309; *Izurieta*, 171 A.3d at 807; *see also* 18 Pa.C.S. §§ 3121(a)(2), 3123(a)(2), and 3126(a)(3). Accordingly, no relief is due.

**2.**

Next, Appellant argues that the evidence was insufficient to prove that Appellant possessed a firearm in violation of 18 Pa.C.S. § 6105(a)(1). Appellant concedes that he is prohibited from legally possessing a firearm but

denies actually possessing one. Appellant's Brief at 17. Appellant contends that the Commonwealth's evidence relies solely on the victim's testimony, which is insufficient to establish beyond a reasonable doubt that any item he possessed met the statutory definition of a firearm under 18 Pa.C.S. § 6105(i), particularly where no firearm was recovered and no test for operability was conducted. *Id.*

To sustain a conviction for Section 6105(a)(1), the Commonwealth must establish that the defendant has been convicted of an offense enumerated in Section 6105(b) and possessed a "firearm." 18 Pa.C.S. § 6105(a)(1). For purposes of this offense, "firearm" is defined as follows: "As used in this section only, the term 'firearm' shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon. *Id.* at § 6105(i). As noted, the crux of Appellant's argument is that the evidence was insufficient because no firearm was recovered and no test for operability was conducted. Appellant's Brief at 17.

We find persuasive a recent unpublished case from our Court addressing Section 6105 where no firearm was recovered and no test for operability was conducted. In ***Commonwealth v. Santana***, 2539 EDA 2022, 2023 WL 8434473 (Pa. Super. filed December 5, 2023) (unpublished memorandum),[9] a panel of this Court concluded: "[c]ontrary to Santana's contention, a

---

[9] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

witness's testimony that they observed someone with a gun, alone, is sufficient evidence to establish possession; recovery of the gun is not required." *Id.* at *2 (citing **Commonwealth v. Robinson**, 817 A.2d 1153, 1161-62 (Pa. Super. 2003)). Furthermore, Section 6105 does not require proof of operability. *Id.* (citing **Commonwealth v. Thomas**, 988 A.2d 669, 671-72 (Pa. Super. 2009); **Commonwealth v. Batty**, 169 A.3d 70, 77 (Pa. Super. 2017)). The **Santana** Court concluded that because Santana had been convicted of an enumerated offense and a witness testified that they saw Santana in possession of a firearm even though no firearm was recovered, the evidence was sufficient to convict him under 18 Pa.C.S. § 6105(a)(1). *Id.* at *3; **see also Commonwealth v. Yaple**, 357 A.2d 617, 618 (Pa. Super. 1976) (stating "[a] reasonable fact finder may, of course, infer operability from an object which looks like, feels like, sounds like or is like, a firearm. Such an inference would be reasonable without direct proof of operability").

We conclude the same holds true here. Appellant conceded that he had a conviction for an enumerated offense and was not permitted to legally possess a firearm. Appellant's Brief at 17. Moreover, both the victim and her mother testified that they saw Appellant in possession of a firearm. **See** N.T., Trial, 3/11-12/24, at 43-48; 87; 89-95. Although no firearm was recovered and no test for operability was conducted, such was not required for a conviction. Pursuant to **Santana**, and the cases cited therein, we conclude that the evidence was sufficient to prove beyond a reasonable doubt the

- 13 -

elements of 18 Pa.C.S. § 6105(a)(1).  ***See Santana***, 2023 WL 8434473, at *2-3; ***see also Yaple***, 357 A.2d at 618.  Accordingly, Appellant's claim fails.

**3.**

Appellant next argues that with respect to the conviction for unlawful contact with a minor, the Commonwealth failed to adduce sufficient evidence that Appellant engaged in an unlawful act.   Appellant's Brief at 18. Specifically, Appellant contends that because there was insufficient evidence to prove rape, IDSI, and indecent assault, the evidence was also insufficient to establish unlawful contact with a minor.  ***See id.***  We disagree.

Under the version of Section 6318 in effect at the time of Appellant's offenses, the crime of unlawful contact with a minor was set forth as follows:

> **(a) Offense defined.--**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
>> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a)(1).[10]

Appellant's argument on this issue is a single sentence, does not challenge the contact element, and is based solely on his assertion that the Commonwealth presented insufficient evidence to prove rape, IDSI, and

---

[10] Section 6318 was subsequently amended in 2023, effective February 12, 2024, and then again in 2025, effective August 26, 2025.

indecent assault. ***See*** Appellant's Brief at 18 (arguing that "the Commonwealth did not prove that the appellant committed the offenses of Rape, … IDSI, … or Indecent Assault[;] and therefore, failed to present sufficient evidence to prove the charge of Unlawful Contact with a Minor"). However, as we concluded above, the evidence was sufficient to establish the elements of rape, IDSI, and indecent assault, all Chapter 31 offenses, beyond a reasonable doubt. Accordingly, Appellant's challenge to the sufficiency of the evidence supporting his conviction for unlawful contact with a minor fails.

## B. Weight of the Evidence

Next, Appellant alleges that the verdict was against the weight of the evidence. Appellant's Brief at 19. Appellant contends that the evidence reflected that Appellant acted with consent and his possession of the firearm was not intended to force the victim to submit to his actions. ***Id.*** at 20.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

- 15 -

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)

(citations omitted). Moreover,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

> * * *

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations

omitted and formatting altered).

The trial court addressed Appellant's challenge to the weight of the

evidence as follows:

> In the instant case, the Commonwealth presented evidence to the jury in the form of testimony, forensic reports, and photographic evidence. The Commonwealth presented the testimony of the victim who testified that the Appellant touched and put his mouth on the outside of her vagina while in the living room of her family home. She further testified that the Appellant would climb through her bedroom window, place a firearm on her dresser, and engage in nonconsensual sexual acts with her, including touching and placing his mouth on the outside of her vagina and inserting

- 16 -

his penis into her vagina. The victim stated that she froze during these encounters and did not know what to do because she was afraid of the Appellant and his firearm. After the victim became pregnant with the Appellant's child, she informed her mother that the Appellant is the father and that the sex was not consensual. She further explained to her mother that she was afraid of the Appellant because of his firearm and because of the nonconsensual sex. The victim's mother testified that the Appellant would often be in her daughter's room alone with victim. She further testified that the Appellant brought a black firearm into her home and continued to bring the firearm into the home even after she stated that she did not like the firearm. When the victim's parents confronted the Appellant, he called the victim on the phone and she stated, without knowing her parents were present and could hear the conversation, that the sex was nonconsensual. The Commonwealth presented a stipulat[ion] to [a] forensic DNA diagnostic report confirming that the Appellant is the father of the victim's child. The Commonwealth further presented testimony from Detective Maus and photographic evidence from the Appellant's house showing an extended firearm magazine, a firearm holster, and two loose live bullets.

The jury was free to believe the victim's testimony and come back with guilty verdicts based on that testimony alone. However, the Commonwealth presented evidence to the jury that corroborated the victim's testimony such as testimonial evidence from the victim's mother that the Appellant had possession of a firearm and brought it into her home, and photographic evidence from the Appellant's home that he had possession of a firearm extended magazine, a holster, and live rounds. The jury was free to believe that the victim was young and intimidated by the presence of a firearm during the nonconsensual intercourse. They were also free to believe the victim's statements, made on several occasions, that the intercourse was nonconsensual. For these reasons, we find that the verdict was not against the weight of the evidence presented to the jury by the Commonwealth.

TCO at 7-9 (internal citations omitted and formatting altered).

The trial court provided a thorough recitation of its reasoning for rejecting Appellant's challenge to the weight of the evidence, and we reiterate that it was for the jury to determine the credibility of the witnesses and

evidence that appeared before it. ***See*** TCO at 7-9; ***Spence***, 290 A.3d at 311. In light of the record before us, and pursuant to the applicable standard of review, we discern no abuse of discretion in the trial court denying Appellant's post-sentence motion for a new trial based on the weight of the evidence. ***Windslowe***, 158 A.3d at 712; ***Spence***, 290 A.3d at 311. Accordingly, Appellant's challenge to the weight of the evidence fails.

### C. Jury Instructions

In his final issue, Appellant contends that the trial court abused its discretion in failing to give the requested jury instruction regarding consent. Appellant's Brief at 9.[11] After review, we disagree.

This Court has stated:

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

_____

[11] In his appellate brief, although Appellant does not frame this issue as a request for a new trial, Appellant did raise this issue in his post-sentence motion for a new trial.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa. Super. 2008) (quoting

*Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa. Super. 2006)).

Here, Appellant requested standard criminal jury instruction Pa.SSJI

(Crim) 8.311B on consent.  Appellant's Brief at 10 (citing N.T., Trial, 3/11-

12/24, at 217).  In his brief, Appellant set forth the portions that he wanted

in the instruction:

> 1. The consent of the victim is a defense to a charge of [Rape, IDSI, Indecent Assault].  Consent is present if the victim at the time of the alleged crime [is willing a [sic] makes [her] willingness known to the defendant by words or behavior].
>
> . . . .
>
> 3. Additionally, the consent of the victim is not legally effective and is not a defense if it is induced by:
>
>    a. force; or
>
>    b. duress; or
>
>    c. deception.
>
> 4. The burden is on the Commonwealth to prove beyond reasonable doubt that the alleged victim did not give a legally effective consent.  Thus, you cannot convict the defendant unless you are satisfied beyond reasonable doubt that the victim did not give a legally effective consent.

*Id.* at 9 (ellipsis and some brackets in original) (quoting Pa.SSJI (Crim)

8.311B).

Relevant to this issue, the record reflects that the trial court instructed

the jury:

> It is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the defendant is guilty of that crime beyond a reasonable doubt.  The

person accused of a crime is not required to present evidence or prove anything in his own defense.

N.T., Trial, 3/11-12/24, at 201.  The trial court continued:

As I said before, the force threatened can be, but does not have to be, physical force or violence.  A person can commit rape by threatening intellectual, moral, emotional, or psychological force.  I'm speaking about something very different from the sort of argument, persuasion, or seduction that might induce someone voluntarily to consent to sexual intercourse.  A person's words or conduct cannot amount to the threat of intellectual, moral, emotional, or psychological force unless they wrongfully impair the freedom of will and ability to choose whether to have sex.

Significant factors to be weighed in determining if there was sufficient forcible compulsion or threat of forcible compulsion including intellectual, moral, emotional, or psychological forcible compulsion include the respect[ive] ages of the victim and the accused, the respect[ive] mental and physical condition of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent the accused may have been in a position of authority, domination, or custodial control over the victim, and whether the victim was under duress.

The list of possible factors is by no means exclusive but provides examples to help you better understand what we mean by forcible compulsion.  I have defined the legal requirements for rape.  But there is no requirement that the accused employ or threaten force likely to cause serious bodily injury or victim put up a fight or resist.  However, you may consider the evidence about the kind and amount of force and the extent of the victim's resistance along with the evidence of all other relevant facts and circumstances when deciding whether you are satisfied that the defendant compelled the sexual intercourse against the victim's will and the defendant did so by force that would prevent resistance by a person of reasonable resolution.

N.T., Trial, 3/11-12/24, at 205-07.  Furthermore, although the trial court

declined to provide Pa.SSJI (Crim) 8.311B, it did instruct the jury as follows:

"And before you may find [Appellant] guilty of the crimes charged as I

- 20 -

indicated, you must be convinced beyond a reasonable doubt that the act charged did, in fact, occur and that it occurred without the victim's consent." *Id.* at 217.

After review, we discern no abuse of discretion. The instruction provided by the trial court informed the jury that the Commonwealth was required to prove beyond reasonable doubt that the victim did not give consent, and that it could not convict Appellant unless it was convinced beyond reasonable doubt that the victim did not consent. When read as a whole, we conclude the trial court's instruction concerning consent adequately and clearly informed the jury of the law and, therefore, the trial court properly exercised its discretion in denying Appellant's post-sentence motion for a new trial. Therefore, no relief is due.

## Legality of Sentence

As stated above, Appellant was convicted of, among other things, rape and IDSI, and we must address *sua sponte* the legality of Appellant's sentence as the trial court failed to impose the mandatory term of probation pursuant to 42 Pa.C.S. § 9718.5. **See Commonwealth v. Armolt**, 294 A.3d 364, 376 (Pa. 2023) (stating "[a]n appellate court may address, and even raise *sua sponte*, challenges to the legality of an appellant's sentence even if the issue was not preserved in the trial court"). Section 9718.5 provides, in relevant part, as follows:

> **(a) Mandatory probation supervision after release from confinement.**--A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating

to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court.

**(b) Imposition.**--The court may impose the term of probation required under subsection (a) in addition to the maximum sentence permitted for the offense for which the defendant was convicted.

**(c) Authority of court in sentencing.**--There shall be no authority in a court to impose on an offender to which this section is applicable a lesser period of probation than provided for under subsection (a). Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section.

42 Pa.C.S. § 9718.5.

Appellant's convictions for rape and IDSI are Tier III offenses pursuant to 42 Pa.C.S. § 9799.14(d). "When a trial court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction." *Commonwealth v. Vasquez*, 744 A.2d 1280, 1284 (Pa. 2000). Because Section 9718.5 is mandatory, the trial court was required to impose the three-year consecutive probationary term, rendering Appellant's current sentence illegal. Accordingly, we affirm Appellant's judgment of sentence but remand for the imposition of the mandatory probationary term pursuant to Section 9718.5.

Judgment of sentence affirmed in all respects but remanded for the imposition of the mandatory probationary term consistent with this Memorandum. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 08/11/2026